20624

In the Matter of James Wallis MORRIS.

(241 S. E. (2d) 911)

*Daniel R. McLeod, Atty. Gen., A. Camden Lewis, Richard B. Kale, Jr., John Lee Choate* and *George C. Beighley, Asst. Attys. Gen.,* of Columbia, *for Complainant.*

*Eugene F. Rogers* and *Heyward E. McDonald,* of Columbia, *for Respondent.*

February 28, 1978.

*Per Curiam:*

This disciplinary proceeding results in respondent's disbarment.

Respondent's unprofessional and unethical conduct arises from his involvement with three clients, to wit: Mr. Van Hatch, Ms. Rosa Lee Jackson, and Mr. Victor T. Jeffers.

## I.   The Van Hatch Matter

Mr. Hatch had applied to the Veterans' Administration for a re-evaluation of his disability when he became acquainted with respondent. Respondent allegedly solicited employment from Hatch in his claim for increased benefits and charged him an illegal fee for his representation.

Following respondent's solicitations, Hatch agreed to allow him to handle his V.A. claim. It was Hatch's understanding respondent's fee would be between $300.00 and $400.00. As payment for the representation, Hatch was to perform maintenance work at a Myrtle Beach motel owned by respondent and his mother.

Respondent admitted charging Mr. Hatch a fee of $1,962.00 for the V.A. representation and that this fee was off-set against the more than $2,200.00 which he owed to Mr. Hatch for maintenance performed at the motel.

Charging a fee in excess of $10.00 for a claim for increased veterans benefits is in violation of 38 U. S. C. A. Sections 3404 and 3405 and punishable by a fine not to

exceed $500.00, or imprisonment not to exceed two years, or both.

Although respondent admitted signing a power of attorney to represent Mr. Hatch before the V.A. which clearly stated the limitation on attorneys' fees in such matters, and admitted reading the applicable federal law surrounding V.A. claims, he denied his awareness of the fee limitation.

While it is true as respondent asserts he did not receive an illegal fee in cash, he was nevertheless paid through 597 hours of maintenance work performed by Mr. Hatch at respondent's request. Respondent's violation of federal law is not excused by his claimed ignorance of the fee limitation.

## II. The Rosa Lee Jackson Matter

Ms. Jackson was a client of respondent whom he persuaded to sign as surety on the appeal bond of another client, Victor T. Jeffers. Although she had never before been involved in a bonding transaction, respondent convinced her to put up her home in a "no-risk" business venture which would earn her $5,000.00.

In inducing Ms. Jackson to take part in the bonding transaction, respondent portrayed Jeffers as a family and business man who deserved a chance to prove his innocence. In fact, Jeffers was a convicted drug smuggler who had a prior bond revoked.

Respondent violated his professional duty to Ms. Jackson by encouraging her to become a surety without disclosing the potential risks involved. He did not adequately warn her of the substantial risk to her home. She was not informed that Jeffers was a client of respondent whose interests might conflict with hers. Ms. Jackson was also unaware of the publicity surrounding the Jeffers' case and the likelihood of additional adverse publicity following his release.

She eventually realized her perilous position and engaged another attorney to cancel her bond. On January 18, 1978,

the entire bond for Victor T. Jeffers, guaranteed by others, was ordered forfeited by a U. S. District Judge.

Respondent's conduct toward Ms. Jackson reveals an appalling lack of consideration for his client's welfare. While concealing relevant information, he encouraged Ms. Jackson to risk her home in order to benefit himself and another client.

### III. The Victor T. Jeffers Matter

Prior to the bonding transaction, respondent represented Jeffers personally in several matters and was on retainer for his business, the B & J Fence Company. Both Jeffers and respondent shared a common interest in aviation and flew together on occasions. Respondent became involved in Jeffers' bond in an effort to collect a debt Jeffers allegedly owed him arising from the crash of respondent's airplane in Jamaica.

In order to obtain the $150,000.00 bond, friends and family of Jeffers executed deeds to property as collateral. In return for Ms. Jackson's agreement to put up her home as security, these deeds were delivered to her and she received a check for $5,000.00.

When she was released as surety, the check and deeds were returned to respondent. He allegedly cashed the check himself without the approval of Jeffers or his family, and retained certain other funds and real property. Betty Jeffers, wife of Victor Jeffers, testified that following the surety's withdrawal, she discovered respondent had returned only some of the property and none of the $14,500.00 cash. Respondent also allegedly attempted to sell a piece of real property belonging to Jeffers' brother which had been put up as collateral. The owner had no knowledge of the impending sale until a "For Sale" sign was placed on the property.

Although respondent contended he had an oral agreement with Jeffers to retain certain property and funds in payment for the debt, Jeffers and his family denied any such agree-

ment and testified the alleged airplane debt was never mentioned by respondent.

The Board determined that even if respondent were entitled to a fee of $10,000.00 for arranging the bonding transaction, he converted an additional $4,500.00 to his own use without his client's authorization. It appears respondent engineered the bonding transaction primarily to serve his own ends, and misappropriated the property of others to whom he owed a fiduciary duty.

In addition to his misconduct in the bonding matter, respondent allegedly was involved in a scheme to defraud the insurance company following the airplane crash in Jamaica. Jeffers testified respondent persuaded him to take part in the scheme and encouraged him to lie under oath in the ensuing insurance litigation. This was evidence respondent gave false testimony and executed fake correspondence in his attempt to obtain the insurance proceeds.

The panel found the following allegations to be substantially true:

(1) That he solicited employment;

(2) That he encouraged one client to enter into a business relationship with him whereby she would post bond for another client;

(3) That he converted certain funds to his own use;

(4) That he encouraged a client to give false testimony in proceedings arising out of the clients' use of respondent's airplane in a narcotics smuggling operation;

(5) That he charged a fee in violation of 38 U. S. C. A. §§ 3404 and 3405.

The panel made the following conclusions of law:

(1) Respondent charged a clearly excessive and illegal fee to Mr. Van Hatch in violation of DR1-106(A);

(2) Respondent represented multiple clients when his professional judgment on behalf of one client would adversely affect the other client in violation of DR5-105;

(3) It is immaterial whether Respondent was acting as a lawyer or in some personal capacity for Disciplinary Rule 1-102(A)(3)(4) to apply to his conduct. He clearly violated said rule in his dealings with Hatch, Rosa Lee Jackson and the Jeffers. He owed a fiduciary duty to the Jeffers with respect to their money and real property;

(4) Respondent violated DR5-104(B) in his dealings with the Jeffers;

(5) Respondent violated DR5-101(A) in his dealings with Rosa Lee Jackson.

The majority of the panel recommended disbarment. A majority of the Full Board voted to affirm the panel's findings of fact and by a 9-3 vote recommended suspension.

Respondent's disregard of his clients' interest in favor of his own is intolerable. We agree with the panel's recommendation. Accordingly, the respondent James W. Morris is hereby disbarred from the practice of law in this State. He shall within five (5) days from the service of this order upon him surrender his certificate of admission to practice law to the Clerk of Court for cancellation.